```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
MARCUS ADAMS,

                Petitioner,

        -against-                       MEMORANDUM & ORDER
                                        11-CV-4563(JS)
UNITED STATES OF AMERICA,

                Respondent.
----------------------------------X
APPEARANCES
For Petitioner:    Marcus Adams, pro se
                   #72219-053
                   United States Penitentiary, Allenwood
                   P.O. Box 2000
                   White Deer, PA 17887

For Respondent:    William Patrick Campos, Esq.
                   United States Attorney's Office
                   Eastern District of New York
                   271 Cadman Plaza East
                   Brooklyn, NY 11201
```

SEYBERT, District Judge:

    Marcus Adams ("Petitioner") petitions this Court pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. For the following reasons, his Petition is DENIED.

## BACKGROUND

    In 1993, Petitioner was convicted of assault in the first-degree in Nassau County Court and deported to Jamaica. (See Pre-Sentence Report ("PSR") ¶ 5.) Petitioner illegally reentered the United States in 2007. (See PSR ¶ 5.) On March 27, 2008, Petitioner was arrested by Nassau County Police Officers near his vehicle in Springfield Gardens in Queens, New York. (See PSR ¶ 2-3.) The passenger in Petitioner's car informed the police officers

that Petitioner had a concealed firearm in his vehicle and that he regularly carried a firearm. (See PSR ¶ 4.) After a search of the vehicle, the officers found a .45 caliber semi-automatic pistol locked in a gun storage case behind the passenger seat. (See PSR ¶ 4.)

On September 18, 2008, Petitioner was transferred to federal custody. (See PSR ¶ 6.) On October 21, 2008, a federal grand jury indicted Petitioner on three counts: (i) Illegal Reentry of a Removed Alien, in violation of 8 U.S.C. § 1326(a); (ii) Possession of a Firearm by a Felon, in violation of 18 U.S.C. § 922(g)(1); and (iii) Possession of a Firearm by an Illegal Alien, in violation of 18 U.S.C. § 922(g)(5)(A). (See Resp't's Br., Docket Entry 16, at 3.)

"On March 30, 2009, pursuant to a plea agreement, [Petitioner] pleaded guilty to Count Two of the indictment, charging possession of a firearm by a felon." (Resp't's Br. at 3 (citing Plea Tr., Docket Entry 16-2, at 15); see also Plea Tr. at 10:25-11:5.) In the plea agreement, Petitioner "expressly waive[d] his right to appeal and agree[d] not to file an appeal or otherwise challenge by petition pursuant to 28 U.S.C. § 2255 or any other provision the conviction or the sentence, if the Court imposes a term of 63 months or below." (Plea Agreement, Docket Entry 16-3, ¶ 4.) After fully reviewing the facts before the Court and questioning both parties, Magistrate Judge Tomlinson, who oversaw

2

the plea hearing, held that Petitioner was acting voluntarily and that he understood his rights and the consequences of his plea. (See Plea Tr. at 21:21-25.) Judge Tomlinson held that there was a factual basis for the plea and accepted it. (See Plea Tr. at 21:24-22:2.)

On November 9, 2009, this Court conducted a Fatico hearing at which time the arresting Nassau County Police Detective, Timothy Slevin ("Slevin"), and Petitioner testified. (See generally Sentencing Hr'g Tr.,[1] Docket Entry 16-4.) Slevin testified as to an interview he conducted with Jonathan Knight, who was the victim of an assault by Petitioner. (See Sentencing Tr. at 9:1-12:15.) Petitioner assaulted Knight with a machete, causing Knight to need to staples on his head. (See Sentencing Tr. at 10:25-11:14.) This assault, and subsequent interview, caused Slevin to pursue Petitioner, which lead to Petitioner's March 2008 arrest.

Petitioner testified that he illegally re-entered the United States and illegally purchased a fake Canadian passport. (See Sentencing Tr. at 34:3-22.) Petitioner also testified that he had been convicted previously for assault. (See Sentencing Tr. at at 38:12-13.) Further, Petitioner stated that he knew the weapon was in his car on the date of his arrest. (See Sentencing Tr. at

---

[1] The Fatico hearing and the sentencing took place on November 4, 2009. In citing that day's transcript, the Court refers to the "Sentencing Tr."

3

52:24-25.)

The Court concluded that the evidence supported Petitioner's arrest and that Petitioner's history of violence "[led] the Court to believe that [Petitioner] is indeed dangerous." (See Sentencing Tr. at 55:5-12.) The Court reviewed the PSR, which advised the Court that the Sentencing Guidelines provided a guideline range of thirty to thirty-seven months imprisonment. (See PSR ¶ 73.) The Court, stated, however:

> The underlying conviction before this Court is again for possession of a weapon. And the Court is troubled with that in view of [Petitioner's] prior ten-year term for a violent crime and [Petitioner]'s subsequent actions, returning to the United States illegally, having a gun in his possession, and a false driver's license. And the underlying arrest which was dismissed in satisfaction of this case basically.
> So the Court finds these to be aggravating factors . . . And the Court believes that these can be the basis for a sentence outside the guidelines.

(Sentencing Tr. at 56:3-15.) The Court sentenced Petitioner to sixty-three months imprisonment. (See Sentencing Tr. at 61:14-18.)

Petitioner appealed the sentence to the Second Circuit Court of Appeals, which, on November 2, 2010, affirmed the Court's sentence. See United States v. Adams, 399 F. App'x 633 (2d Cir. 2010).

In the instant Petition, Petitioner claims ineffective assistance of trial counsel, arguing that his trial counsel "advised him that there was a substantial likelihood that he would

4

not be sentenced to 63-months as a result of the guilty plea[.]" (Pet'r's Br., Docket Entry 1, at 11; see also Pet. ¶ 12(A).) Petitioner asserts that his "defense counsel should have known that the court can treat the 63-month[] sentence as mandatory under the Guidelines [c]alculation, making 63-months a certainty." (Pet'r's Br. at 11.)

DISCUSSION

The Court will first address the applicable legal standard before turning to the merits of the Petition.

I. Legal Standard

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, --- U.S. ----, 131 S. Ct. 770, 780, 178 L. Ed. 2d 624 (2011).

> A prisoner in custody under sentence of a [federal] court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

> If the court finds . . . that there has been such a denial or infringement of the constitutional rights of the prisoner . . . the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

Id. at § 2255(b).

5

The United States Supreme Court has held that "to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166, 102 S. Ct. 1584, 1593, 71 L. Ed. 2d 816 (1982). "Habeas corpus, it is well known, 'is not a neutral proceeding in which the petitioner and the State stand on an equal footing. Rather, it is an asymmetrical enterprise in which a prisoner seeks to overturn a presumptively valid judgment. . . .'" Skaftouros v. United States, 667 F.3d 144, 158 (2d. Cir. 2011) (quoting Pinkney v. Keane, 920 F.2d 1090, 1094 (2d Cir. 1990)). Petitioner has the burden of proving his claims by a preponderance of the evidence. Id. (citing Parke v. Raley, 506 U.S. 20, 31, 113 S. Ct. 517, 121 L. Ed. 2d 391 (1992); Walker v. Johnston, 312 U.S. 275, 286, 61 S. Ct. 574, 85 L. Ed. 830 (1941)).

"The Court's discretion to grant relief under section 2255 is to be exercised sparingly, for such applications are in tension with society's strong interest in the finality of criminal convictions." Castro v. United States, --- F. Supp. 2d ----, 12-CV-5024, 2014 WL 320476, at *4 (E.D.N.Y. Jan. 29, 2014) (quoting Elize v. United States, No. 02-CV-1350, 2008 WL 4425286, at *5 (E.D.N.Y. Sept. 30, 2008); citing Brecht v. Abrahamson, 507 U.S. 619, 633-34, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993) (internal quotation marks omitted)).

The Supreme Court has held, additionally, that, as a

general rule, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003) (citing Frady, 456 U.S. at 167-68, 102 S. Ct. 1594; Bousley v. United States, 523 U.S. 614, 621-22, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)). The Supreme Court has held, however, that ineffective assistance of counsel claims may be "brought in the first instance in a timely motion in the district court under § 2255 . . . whether or not the petitioner could have raised the claim on direct appeal." Id.

II. Ineffective Assistance of Counsel Standard

"It has long been recognized that the right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970) (citing Reece v. Georgia, 350 U.S. 85, 90, 76 S. Ct. 167, 170, 100 L. Ed. 77 (1955); Glasser v. United States, 315 U.S. 60, 69-70, 62 S. Ct. 457, 464-65, 86 L. Ed. 680 (1942); Avery v. Alabama, 308 U.S. 444, 446, 60 S. Ct. 321, 322, 84 L. Ed. 377 (1940); Powell v. Alabama, 287 U.S. 45, 57, 53 S. Ct. 55, 59-60, 77 L. Ed. 158 (1932)).

In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court established a two-part test to determine whether counsel's assistance was ineffective. First, "[Petitioner] must show that counsel's

7

representation fell below an objective standard of reasonableness." Id. at 688. To establish the first prong of the Strickland test, Petitioner must overcome the strong presumption that the challenged action was sound trial strategy under the circumstances at the time. See id. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [Petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound [] strategy." (internal quotation marks and citation omitted)). Second, Petitioner must show that counsel's performance prejudiced his defense; "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694 (noting "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome").

A. Analysis

During the plea hearing, before the Court accepted Petitioner's plea, Judge Tomlinson informed Petitioner that this Court "must consider the sentencing guideline but [the Court] is not compelled to sentence you within that range." (Plea Tr. at 13:24-14:1.) Petitioner affirmed that he understood. (Plea Tr. at 14:3.) Judge Tomlinson informed Petitioner that this Court would "consider all the other factors in [his] case" and that the Guidelines range would not be binding on the Court. (Plea Tr. at

8

14:4-15:1.) Judge Tomlinson informed Petitioner that "if the sentence is more severe than [he] expected, [he] [would] be bound nonetheless by [his] guilty plea", which Petitioner affirmed. (Plea Tr. at 15:1-6.)

Petitioner told Judge Tomlinson that he had not received any promises, besides the Plea Agreement, that caused him to plead guilty. (Plea Tr. at 16:5-10.) Petitioner stated that no one had made any promises as to what his sentence would be. (Plea Tr. at 16:23-25.) Finally, Petitioner testified that he was guilty of the crime. (See, e.g., Plea Tr. at 17:1-8; 21:16-19.)

Petitioner testified, under oath, that no one had made any promises to him regarding his sentence. Moreover, assuming, arguendo, Petitioner's counsel did tell Petitioner that there was a substantial likelihood that his sentence would be less than sixty-three months, counsel's alleged determination was matched by the PSR's finding that the Guidelines range was thirty to thirty-seven months. As the Court had to consider the Guidelines, and the Plea Agreement includes a sixty-three month maximum to invoke Petitioner's appellate waiver, counsel's alleged statement was a reasonable one and, thus, Petitioner fails to establish the first-prong of the Strickland analysis.

Furthermore, counsel's advice regarding the obstructionist enhancement was accurate. In any event, Petitioner has also failed to show prejudice. Petitioner testified that he

9

did not receive any promises as to his sentence, thus demonstrating a lack of prejudice in this regard.  Petitioner knew the terms of his plea agreement and counsel's alleged statement was not taken by Petitioner, according to his testimony, as a promise regarding his sentence.  Additionally, given the facts in this case, Petitioner has not show that, absent counsel's ineffectiveness, he would have gone to trial.

The Petition, therefore, is DENIED.

CONCLUSION

For the reasons set forth above, Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED. Because there can be no debate among reasonable jurists that Petitioner was entitled to habeas relief, the Court does not issue a Certificate of Appealability.  28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005).

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se Petitioner and to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     April   9  , 2014
           Central Islip, NY